UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILSON LABORIEL,

                  Petitioner,

           v.

WILLIAM LEE,

                  Respondent.

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 01/07/2021

18-CV-3616 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Petitioner Wilson Laboriel, proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his New York convictions for one count of second-degree criminal sale of a firearm, six counts of third-degree criminal sale of a firearm, and four counts of third-degree criminal possession of a weapon. *See* Dkt. 1, 26. On June 22, 2020, Magistrate Judge Stewart D. Aaron issued a Report and Recommendation (the "Report") recommending that the Court dismiss the Petition in its entirety. *See* Dkt 29. Plaintiff filed timely objections to the Report, arguing that (1) Petitioner's Fourth Amendment claim regarding a warrant for his Facebook page was reviewable, and that the warrant was not supported by probable cause; (2) the trial court improperly denied his request for substitution of counsel; and (3) his trial counsel was ineffective on several grounds. *See* Petitioner's Objections ("Objections"), Dkt. 30.

    The Court assumes the parties' familiarity with the facts and procedural history of this case, as outlined in the Report. Having reviewed the Report, Petitioner's objections, and the parties' underlying filings, the Court denies Petitioner's application for a writ of habeas corpus.

## LEGAL STANDARDS

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Pursuant to Rule 72(b), a court may accept portions of a report to which no objections are made as long as those portions are not "clearly erroneous." *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997). A court must undertake a *de novo* review of those portions to which specific objections are made. See 28 U.S.C. § 636(b)(1); *Greene*, 956 F. Supp. at 513 (citing *United States v. Raddatz*, 447 U.S. 667, 676 (1980)). "[T]o the extent that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *See, e.g., Alam v. HSBC Bank USA, N.A.*, No. 07-CV-3540 (LTS), 2009 WL 3096293, at *1 (S.D.N.Y. Sept. 28, 2009). "Objections of *pro se* litigants are generally accorded leniency and construed to raise the strongest arguments that they suggest." *Quinn v. Stewart*, No. 10-CV-8692 (PAE) (JCF), 2012 WL 1080145, at *4 (S.D.N.Y. Apr. 2, 2012) (internal quotation marks omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that when a state court has previously adjudicated the merits of petitioner's habeas claim, a federal district court may grant relief only where the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented." *Id*. § (d)(2). *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) (noting that 28 U.S.C. § 2254(d) is "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions"). To be contrary to clearly established federal law, the relevant state-court decision must be "opposite" to

a conclusion the U.S. Supreme Court has made on a matter of law, or "decide[ ] a case differently" than the Supreme Court "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 364-65 (2000). A state court unreasonably applies clearly established federal law when it construes Supreme Court holdings in a "not merely wrong" but "objectively unreasonable" manner. *White v. Woodall*, 572 U.S. 415, 419 (2014). Federal habeas courts must also "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (quoting 28 U.S.C. § 2254(e)(1)).

## DISCUSSION

I. **Petitioner's Fourth Amendment Claim**

Petitioner first objects to Judge Aaron's recommendation that his Fourth Amendment challenge to a warrant for his Facebook account be dismissed on the ground that it is "not cognizable on federal habeas review." Report at 16. The Report found that Petitioner had a "full and fair opportunity to raise his claim regarding the Facebook warrant both in the trial court and before the Appellate Division," *id*. at 17, and that the claim was therefore unreviewable by a federal court. *See Graham v. Costello*, 299 F.3d 129, 133-34 (2d Cir. 2002) ("As a general rule, Fourth Amendment claims are not reviewable by the federal courts when raised in a petition brought under § 2254 unless the state prisoner shows that he or she has not had a full and fair opportunity to litigate that claim in the state court.") (citations omitted); *Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir. 1992) (federal habeas review of Fourth Amendment claims is available only "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant

was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.").

Upon *de novo* review, the Court finds that Judge Aaron did not err in concluding that Laboriel had a full and fair opportunity to litigate the Facebook warrant. As Laboriel acknowledges, the state trial and appellate courts each considered and rejected his claim that there was no probable cause for the issuance of the Facebook warrant. *See* First Amended Complaint Traverse ("FAC"), Dkt. 33, at 10, 12. Laboriel correctly points out that the trial court's rejection of his oral challenge to the warrant was cursory, consisting only of the trial judge's statement that he "actually reviewed the stuff" and was "satisfied [that the warrant] was issued appropriately." FAC at 10. Laboriel further asserts that such a cursory explanation violated New York Criminal Procedure Law ("CPL") § 710.60(6), which requires a trial court ruling on a suppression motion made during trial to set forth on the record the factual and legal basis for its conclusion. *See* FAC at 9–10. But even if the trial court's cursory explanation of its decision violated CPL § 710.60, Laboriel cannot establish that such a failure constituted "an unconscionable breakdown in the underlying process," *Capellan*, 975 F.2d at 70, where the "alleged procedural errors . . . effectively thwarted the petitioner's ability to present [his] Fourth Amendment claims." *Gomez v. LeFevre*, No. 87 CIV 2341(MJL), 1989 WL 63030, at *5 (S.D.N.Y. June 2, 1989).

An "unconscionable breakdown" occurs only "where the petitioner demonstrates that *no state court* conducted a reasoned method of inquiry into relevant questions of fact and law, or any inquiry at all into the Fourth Amendment claim." *Washington v. Walsh*, No. 10-CV-7288

(RJS), 2015 WL 4154103, at *18 (S.D.N.Y. July 9, 2015) (emphasis added) (citation omitted).[1] Here, it is plain that the Appellate Division gave full consideration to, and rejected, Laboriel's Fourth Amendment claim. Although Laboriel argues that the trial court's failure to follow CPL 710.60(6) "preclude[d] informed appellate review," Objections at 3, the record indicates that the First Department fully considered the merits of this claim. The Appellate Division held that the "affidavit in support of the warrant demonstrated that there was sufficient information to support a reasonable belief that evidence of the charged weapons crimes could be found in defendant's Facebook page, particularly in light of a pattern of Facebook connections among other members of the weapons-trafficking operation." *People v. Laboriel*, 146 A.D.3d 631, 632 (2017). The Appellate Division also found that any error would be harmless, in that "the Facebook evidence was a minor component of the People's overwhelming case." *Id*. Under these circumstances, it cannot be said that "no state court conducted a reasoned method of inquiry" into the Fourth Amendment claim. *Washington*, 2015 WL 4154103, at *18. Because Laboriel had a full and fair opportunity to—and did in fact—litigate his Fourth Amendment claim, the claim is now unreviewable. *Graham*, 299 F.3d at 133-34.

## II. Petitioner's Request for Substitution of Counsel

Laboriel next argues that the Report erred in concluding that he was not entitled to habeas relief stemming from the state courts' denial of his request for substitution of counsel. *See* Objections at 3–5.

In his underlying criminal proceedings, the trial court declined to grant Laboriel's request for a substitution of counsel, finding that his initial request for new counsel "appear[ed] to be a

---

[1] *Cf. Allah v. LeFevre,* 623 F.Supp. 987, 991–92 (S.D.N.Y.1985) (other examples of "unconscionable breakdowns" include bribery of a judge, use of torture, and use of perjured testimony).

form, fill-in-the-blanks motion" with "generic" factual allegations that are not "clearly identifiable as specific to this case." SR 12, Dkt. 17-3. In affirming his conviction, the Appellate Division agreed that Laboriel had not made specific enough complaints about his relationship with his lawyer to require the trial court to conduct an inquiry into the counsel's adequacy. The First Department held that Petitioner's "standard form motion for assignment of new counsel did not contain the specific factual allegations of serious complaints about counsel necessary to trigger the court's obligation to make a minimal inquiry" and that Petitioner "failed to amplify his conclusory complaints about his attorney with any case-specific allegations." *Laboriel*, 146 A.D.3d at 632. Judge Aaron determined that these decisions were neither clearly contrary to, nor an unreasonable application of, clearly established federal law, which provides that the right to choice of counsel is "not an absolute right," *United States v. Brumer*, 528 F.3d 157, 160 (2d Cir. 2008) (per curiam), that indigent defendants do not have a "veto over who is appointed to defend them," *Felder v. Goord*, 564 F. Supp. 2d 201, 220 (S.D.N.Y. 2008), and that "a defendant seeking substitution of assigned counsel" must "afford the court with legitimate reasons for the lack of confidence," *McKee v. Harris*, 649 F.2d 927, 932 (2d Cir. 1981). *See* Report at 17–19.

      Laboriel now objects that the Report overlooked a component of his argument, in that it analyzed his claim solely under 28 U.S.C. § 2254(d)(1) (i.e., by asking whether the state courts' decisions were contrary to clearly established federal law) instead of under § 2254(d)(2) (i.e., by asking whether the state courts' factual determinations were unreasonable). *See* Objections at 3; Report at 17–19. Laboriel is correct that his petition asserted not only that the state courts misapplied Sixth Amendment *law*, but also that the Appellate Division unreasonably reached the *factual* conclusion that Laboriel failed to make sufficiently specific complaints about his attorney. *See* FAC at 23–24.

6

Having reviewed the state courts' decisions and the factual record *de novo*, the Court concludes that these decisions were not "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). The factual record of Laboriel's request for new counsel is as follows: On November 21, 2012, several weeks after arraignment, Laboriel submitted a form motion for substitution of his court-appointed attorney. SR 11, Dkt. 17-3. On January 7, 2013, the trial court deferred decision on the motion to the next court date, but noted that Laboriel's submission "appears to be a form, fill-in-the-blanks motion available to prisoners at Rikers Island" with "generic" factual allegations that are not "clearly identifiable as specific to this case." SR 12, Dkt. 17-3. On January 15, Laboriel again requested reassignment of counsel, stating that he "need[ed] a lawyer that can speak with me and communicate with me." The trial court stated that it would "deal with" that request at Laboriel's next court appearance on January 31. SR 13, Dkt. 17-3. At that appearance, Laboriel did not raise his request for new counsel. *See* Report at 6. On May 21, 2013, on the eve of trial, the trial court refused to allow Laboriel to speak when he requested to do so. SR 13, Dkt. 17-3. In his habeas petition, Laboriel argues that the Appellate Division unreasonably construed this factual record to conclude that he had "failed to amplify his conclusory complaints" about his lawyer. *See* FAC at 23.

The Court disagrees. Laboriel has not pointed to clear and convincing evidence that he raised specific allegations about his attorney's conduct that would have necessitated an inquiry into the adequacy of his trial counsel's representation. *See Schriro*, 550 U.S. at 473–474 ("AEDPA . . . requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" (quoting 28 U.S.C. § 2241(e)(1)). Although the trial court denied him the opportunity to speak on one occasion, *see* FAC at 23, Laboriel had several other opportunities to raise concerns about his trial

7

counsel, and has not pointed to evidence that he raised or attempted to raise complaints beyond his generic assertions that he was having difficulty communicating with his lawyer. Against this backdrop, giving the requisite level of deference to the state courts' factual determinations, the Court declines to disturb the Appellate Division's finding that "the court accorded defendant several opportunities to be heard" and that "defendant failed to amplify his conclusory complaints about his attorney with any case-specific allegations." *Laboriel*, 146 A.D.3d at 632. For the same reason, the Court finds that the Appellate Division's determination that Laboriel was not entitled to a substitution of counsel was not contrary to, or an unreasonable application of, clearly established federal law. *See McKee*, 649 F.2d at 931–932 ("[A] defendant seeking substitution of assigned counsel must . . . afford the court with legitimate reasons for the lack of confidence.").

### III.   Petitioner's Ineffective Assistance of Counsel Claims

Finally, Laboriel argues that the Report erred in finding that he had received effective assistance from his trial counsel, a claim the trial court reached on the merits in adjudicating Laboriel's motion to vacate his convictions under CPL § 440.10(1)(h). *See* Objections at 5; SR 573, Dkt. 17-6. Reviewing petitioner's ineffective assistance of counsel claims *de novo*, the Court agrees with Judge Aaron that they should be denied.

To prevail on an ineffective assistance of counsel claim, a petitioner must show both that counsel's performance "fell below an objective standard of reasonableness" and that the petitioner was prejudiced by it. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To show prejudice, petitioner must demonstrate a "substantial" likelihood that, but for counsel's errors, the result of the trial would have been different. *Harrington*, 562 U.S. at 111–12; *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005). As the Supreme Court has explained:

> In assessing prejudice under *Strickland,* the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. *The likelihood of a different result must be substantial*, not just conceivable.

*Harrington*, 562 U.S. at 111–12 (emphasis added) (citations omitted). "Taking both AEDPA and *Strickland* together, the question when reviewing a state court's *Strickland* determination is thus 'not whether a federal court believes the state court's determination was incorrect[,] but [rather] whether that determination was [objectively] unreasonable—a substantially higher threshold.'" *Riley v. Noeth*, 802 F. App'x 7, 10 (2d Cir. 2020) (quoting *Schriro*, 550 U.S. at 473). *See also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (a "doubly deferential judicial review" applies to *Strickland* claims evaluated under § 2254(d)).

Laboriel argues that his trial counsel was ineffective in that he failed to (1) provide Laboriel with his complete case file; (2) request a suppression hearing to challenge the lawfulness of a police stop, which provided a basis for a detective's eyewitness identification of him; (3) challenge a subpoena to Metro PCS for cell phone records; (4) object to the introduction of his birth certificate; and (5) challenge the warrant for his arrest. Judge Aaron found that the trial court reasonably disposed of each of these challenges in denying Laboriel's motion to vacate his conviction. *See* Report at 19–21. Laboriel now objects to the Report's findings with respect all but one of them.[2] *See* Objections at 5–13. The Court agrees with Judge Aaron that,

---

[2] Laboriel does not object to Judge Aaron's finding that trial counsel did not render ineffective assistance by failing to object to the introduction of Laboriel's birth certificate and that of his sister on the ground that those records had not been subpoenaed. Report at 20. The trial court held this claim to be "baseless," SR 583, Dkt. 17-7, a finding Judge Aaron found to be reasonable, especially in view of the fact that the prosecution's "obvious purpose" in introducing the birth certificates was to establish Laboriel's familial connection to his sister, a relationship

9

under the "doubly deferential judicial review" the Court must conduct, *Knowles*, 556 U.S. at 123, the trial court's determinations were not "objectively unreasonable," Report at 19.

Laboriel first asserts that defense counsel was ineffective in failing to provide him his complete case file before and after the trial. The trial court found that any such failure was not prejudicial, as it "did not deny [Laboriel] information that would have enabled him to alert counsel that some of the evidence offered at trial was inadmissible or had been illegally obtained." SR 580, Dkt. 17-6. Laboriel speculates that, with access to the complete case file, he "may have had the opportunity to suppress evidence before trial, or at the very least, preserve my issues for appellate review." FAC at 41. He notes that certain "withheld documents that [he] managed to obtain [after trial] established [the] unlawfulness" of his arrest and the government's evidence, *id*., but he does not identify those documents or explain how they would have been likely to alter the result at trial. Laboriel has thus failed to carry his burden to "affirmatively prove prejudice." *Strickland*, 466 U.S. at 493.

Second, Laboriel argues that his trial counsel was ineffective in that he should have moved to suppress Detective Douglas Lansing's eyewitness identification testimony, as he asserts that it was the fruit of an unlawful stop. *See* FAC at 32. The stop occurred on January 5, 2012, when Detective Lansing followed a suspect from the site of an undercover officer's car (inside of which a weapons sale had taken place) to outside a Duane Reade; when Laboriel subsequently exited that Duane Reade, the detective stopped him and asked him to produce identification. *See* Objections at 8. The state court rejected the claim that trial counsel's decision not to seek a suppression hearing constituted ineffective assistance of counsel, finding, *inter alia*,

---

Laboriel himself admitted. Report at 20. Reviewing this finding for clear error, *see Greene*, 956 F. Supp. at 513, the Court discerns none.

10

that (a) the stop was not illegal, as it was supported by reasonable suspicion; and (b) the undercover officer could separately have made in-court identifications of the defendant based on four independent interactions. *See* SR 580–581, Dkt. 17-6. In light of these reasonable conclusions, Laboriel has not shown that an attempt by counsel to suppress the eyewitness identification testimony would have had merit, much less that it would have been reasonably likely to alter the outcome at trial.

Laboriel's next assertion is that his counsel was ineffective for failing to challenge a subpoena for cellphone records to Metro PCS. But the trial court found that such a challenge would have lacked merit, as Defendant's position was that the phone in question did not belong to him, *see* Dkt. 17-1 at 22, and therefore he would have been unable to assert standing to challenge the subpoena. *See* SR 577, Dkt. 17-6. Laboriel's assertion that his trial counsel could have investigated the Metro PCS subpoena and identified "information that could have been obtained in order to assert standing," FAC at 39, amounts to unsubstantiated speculation which, in the Court's view, is insufficient to establish a substantial likelihood that investigating or challenging the subpoena would have altered the outcome of the proceedings. The Court accordingly agrees with Judge Aaron's conclusion that the trial court's finding was reasonable. *See* Report at 20.

Fourth, Laboriel argues that his counsel was ineffective for failing to "investigate and challenge" his arrest. FAC at 35. Laboriel argues that his arrest at his girlfriend's apartment, where he resided, was unlawful in that the arrest warrant itself was not possessed by the officers who carried out the arrest and, that, when Laboriel later obtained a copy of the warrant, it had not been subscribed by a judge. Objections at 11; FAC at 35–38. The trial court rejected this claim. It held that the arrest was lawful based on "two separate arrest warrants issued by Supreme Court,"

11

and that "[t]here is no statutory requirement that a Supreme Court arrest warrant be subscribed by a judge" or be possessed by the arresting officer at the time of the arrest. SR 579, Dkt. 17-6. The court further held that "even if the arrest warrant contained a defect that made the police entry into the apartment illegal, there were no suppressible fruits of the arrest," as Laboriel's "arrest was still supported by probable cause based on the fact that two indictments had been filed against him," and as the only evidence introduced as a result of the arrest—two photographs of Laboriel at the precinct—would not have been suppressible under New York law. *Id*. Judge Aaron rightly concluded that these findings were reasonable, and that any challenge to the arrest raised by Laboriel's trial counsel would have been meritless. Report at 21. Even if the trial court was wrong about the legality of the arrest and the possibility of suppressing the photographs, however, Laboriel's claim would still fail under *Strickland*, as he has not shown that suppression of the photographs of him in the precinct (coupled with the detective's testimony about the arrest) would have been likely to affect the outcome at trial. *Harrington*, 562 U.S. at 112. Laboriel notes that the precinct photographs "had a match in clothing from the surveillance video," FAC at 37, but he cannot show that suppression of this evidence could reasonably have resulted in acquittal, in light of the several other independent bases for in-court identification of Laboriel. *See* Report at 11–12; *see also* Dkt. 17-1 (Resp. Mem.) at 23 ("During the firearms sales, the undercover had four lengthy, in-person meetings with petitioner inside a car. Three of these meetings took place in broad daylight. A high-quality recording clearly captured petitioner's image and voice during these meetings."). This claim thus fails.

Finally, Laboriel asserts in fairly general terms that his trial counsel was ineffective for "fail[ing] to investigate derivation of evidence," which "did not premise sound strategy." Objections at 12; FAC at 41–42. To the extent that Laboriel has identified specific instances of

his trial counsel's purported failures to challenge certain evidence, the Court has addressed those above. Considering the record of "[trial] counsel's overall performance throughout the case," *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986), the Court does not find an overarching failure of strategy sufficient to overcome the "strong presumption that counsel's performance falls within the wide range of professional assistance." *Strickland*, 477 U.S. at 381. The Court further rejects Laboriel's assertion that the trial court misapplied *Strickland* by "refus[ing] to consider counsel's strategic thinking." Objections at 13. He refers to the fact that the trial court declined to order trial counsel to provide an affirmation on the grounds that Laboriel's motion could "be decided without having to consider counsel's strategic thinking about any of the complaints raised in this motion." SR 576, Dkt 17-6. The Court agrees that Laboriel's ineffective assistance claims can be disposed of without an affirmation from trial counsel, and thus discerns no objectively unreasonable application of *Strickland*.

## IV. Certificate of Appealability

Although the Court finds that Laboriel is not entitled to habeas relief, in its view Laboriel's thorough and well-reasoned *pro se* submissions have presented at least one issue "that reasonable jurists could debate." *Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see* 28 U.S.C. § 2253(c)(2) (providing that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right"). The Court grants Laboriel a certificate of appealability limited to the question as to whether, with respect to Laboriel's Sixth Amendment claim, the trial court "adequately inquired into" Laboriel's motion for substitution of counsel and subsequent oral statements, *see United States v. John Doe No. 1*, 272 F.3d 116, 122 (2d Cir. 2001).

13

## CONCLUSION

For the foregoing reasons, the Court overrules Laboriel's objections to Judge Aaron's Report and Recommendation. The Petition is denied. Laboriel is entitled to a certificate of appealability on the issue described above, and he is granted *in forma pauperis* status for purposes of that appeal, should he choose to take one. The Clerk of Court is respectfully directed to mail a copy of this order to Laboriel, and to close the case.

SO ORDERED.

Dated:   January 7, 2021
         New York, New York

                                                    Ronnie Abrams
                                                    United States District Judge